UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ISAIAH MARIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:19-CV-2864 RLW |
| | ) | |
| JANE/JOHN DOE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of plaintiff (registration no. 1134898), an inmate at Potosi Correctional Center ("PCC"), for leave to commence this action without payment of the required filing fee. For the reasons stated below, the Court finds that the plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $30.04. *See* 28 U.S.C. § 1915(b)(1). Furthermore, after reviewing the complaint and the supplemental complaints, the Court finds that the complaint should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these

monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $150.19. Accordingly, the Court will assess an initial partial filing fee of $30.04.

## 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court may dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. An action is frivolous if "it lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action is malicious when it is undertaken for the purpose of harassing litigants and not for the purpose of vindicating a cognizable right. *Spencer v. Rhodes*, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), *aff'd* 826 F.2d 1059 (4th Cir. 1987).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Id.* at 1949. Second, the Court must determine whether the complaint states a plausible claim for relief. *Id.* at 1950-51. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." *Id.* The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." *Id.*

at 1951. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred. *Id.* at 1950, 1951-52.

## The Complaint

Plaintiff is an inmate at the Potosi Correctional Center ("PCC"). He brings this action pursuant to 42 U.S.C. § 1983 against the following defendants: Jane/John Doe (Correctional Officer, Missouri Eastern Correctional Center ("MECC")); Jane Doe I (Correctional Officer, MECC); Jane/John Doe II (Correctional Officer, MECC); Jennifer Sachse (Warden, MECC). Plaintiff brings this action against defendants in their individual and official capacities.

Plaintiff claims that on April 6, 2018, he was ill and found unconscious in his cell at MECC close to midnight by Correctional Officer Matthew Tarrant and an unidentified John/Jane Doe I.

Plaintiff asserts that Jane/John Doe I and Tarrant, who is not a defendant in this lawsuit, bound his ankles together in one zip-cuff. Plaintiff asserts that according to MDOC regulations, three zip-cuffs should have been used – one around each ankle and one attached to each zip-cuff. Plaintiff states that when he came to, defendants Jane Doe and Jane/John Doe II made him walk in a shuffle with his ankles bound from his housing unit, a short distance to the outside, to reach the golf cart that was parked in the yard so he could be transported to the medical building. Plaintiff asserts that the zip-cuffs caused bleeding as they cut into the flesh of his ankles. Plaintiff claims that at the medical building, pictures were taken of his ankles because the zip-cuffs had caused bleeding.

As a result of the zip-cuffs, plaintiff suffered three superficial abrasions, as outlined in his Grievance Appeal Response from Cindy Griffith, Deputy Director of Adult Institutions, on

November 8, 2018. Plaintiff admits he was treated for these abrasions with Neosporin and band-aids.

Plaintiff asserts that the use of one zip-cuff rather than three zip-cuffs was a breach of an Institution Rule. Plaintiff filed an IRR, as well as a grievance, relative to the incident which was denied in a grievance response filed on August 23, 2018 by Warden Sachse. The Warden found that the Departmental policy had been followed by the Officers who escorted plaintiff on the night of April 6, 2018.

Due to plaintiff being found unconscious, Officer Tarrant reported a conduct violation against plaintiff for allegedly using an intoxicating substance and placed him in administrative segregation. Plaintiff states that the conduct violation was expunged on May 4, 2018.

Plaintiff claims that Jennifer Sachse, the Warden at MECC, is responsible for all of the functions at MECC and should therefore be held liable for his damages in this action.

Plaintiff seeks injunctive relief and compensatory damages in this action.

**Discussion**

Plaintiff asserts that he was subjected to cruel and unusual punishment by defendants when they used the zip-cuffs on him for the time he traveled from his cell to the medical cart. He asserts that he was left with "permanent scarring from the incident." Plaintiff also asserts that the individual defendants acted unlawfully when they violated their own Institutional Policy by failing to use three zip-cuffs instead of using one. Moreover, plaintiff seeks to have the practice of using zip ties on the inmates abolished.

Plaintiff's official capacity claims against defendants must be dismissed for failure to state a claim. A suit brought against a state official in his or her official capacity pursuant to § 1983 is not a suit against the official, but rather a suit against the official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). In other words, the real party in interest

in an official-capacity suit is not the named official, but the governmental entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). *See also Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"); and *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official…capacities sues only the public employer").

However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will*, 491 U.S. at 71. *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "suit for damages against a state official in his official capacity is a suit against the State, and the State is not a person under § 1983"). Moreover, in the absence of a waiver, the Eleventh Amendment[1] bars suit against a state official acting in his or her official capacity. *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 744 (8th Cir. 1998).

Plaintiff alleges that all the named defendants are employed at the Missouri Eastern Correctional Center. The Missouri Eastern Correctional Center is part of the Missouri Department of Corrections, which is a state agency of the State of Missouri. As noted above, plaintiff's official capacity claim against each individual defendant is really a claim against that defendant's employer. Accordingly, plaintiff's official capacity claims are actually claims against the State of Missouri. Such claims are barred because a state is not a "person" for purposes of § 1983, and because the Eleventh Amendment bars suits against state officials acting in their official capacity. In this instance, plaintiff's claims against the Missouri Eastern Correctional Center are also barred.

---

[1] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI.

The way a person is treated while incarcerated, and the conditions of his confinement, are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment and provides a "right to safe and humane conditions of confinement." *Brown v. Fortner*, 518 F.3d 552, 558 (8th Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). A successful claim under the Eighth Amendment requires that the plaintiff show "[a] denial of safe and humane conditions" resulting "from an officer's deliberate indifference to a prisoner's safety." *Id.* (quoting *Fruit v. Norris*, 905 F.2d 1147, 1150 (8th Cir. 1990)). Deliberate indifference requires "more than mere negligence," but does not require acting "for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835.

Plaintiff complains that the act of making him walk the short distance from his cell to the medical cart while his legs were zip-cuffed was cruel and unusual punishment. He asserts that the purported cruel and unusual punishment was shown by the Correctional Officers' failure to adhere to the Institution's Rules regarding the use of zip-cuffs as well as the damage that was done to his ankles. However, as plaintiff admits, he was given Neosporin and bandaids for the purported damage to his ankles from the zip-cuffs. And he only traveled a short distance with the zip-cuffs on his ankles from his cell to the medical cart.

Additionally, a violation of an institutional rule does not establish a constitutional violation. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (*citing Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996)); *see also Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (failure to follow prison policy is not basis for § 1983 liability). Accordingly, the Court cannot say that plaintiff was subjected to cruel and unusual punishment when he was required to

walk from his cell to the medical cart in zip-cuffs.[2] And plaintiff's request to have the institutional practice of the use of zip cuffs will be denied at this time.

Accordingly,

**IT IS HEREBY ORDERED** that that this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that an appeal of this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 22nd day of May, 2020.

RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE

---

[2] Given that plaintiff was treated with Neosporin and bandaids, the Court cannot find that he was subjected to deliberate indifference in medical care in violation of the Eighth Amendment. To state a claim for medical mistreatment, plaintiff must plead facts sufficient to indicate a deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Camberos v. Branstad*, 73 F.3d 174, 175 (8th Cir. 1995). In order to show deliberate indifference, plaintiff must allege that he suffered objectively serious medical needs and that defendants actually knew of but deliberately disregarded those needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Plaintiff has failed to do so.